IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
AUG 2 0 2007
CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| GORDON DUFF CULWELL, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | NO. 4:04-CV-655-A |
| | § | |
| CITY OF FORT WORTH, TEXAS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

I.

Background

On October 19, 2005, the court granted the motion for
summary judgment of defendant, City of Fort Worth, Texas, and
dismissed all claims (unlawful discrimination in employment,
hostile work environment, and unlawful retaliation) of
plaintiffs, Gordon Duff Culwell ("Culwell"), and William Patrick
Conrad ("Conrad"). A final judgment dismissing the claims was
signed on that date. Plaintiffs appealed. The Fifth Circuit
affirmed the dismissals of plaintiffs' unlawful retaliation and
hostile work environment claims but reversed the summary judgment
as to plaintiffs' unlawful discrimination claims. Culwell v.
City of Fort Worth, 468 F.3d 868 (5th Cir. 2006).

The decision of the Fifth Circuit to reverse the summary judgment as to the unlawful discrimination claims was based on the failure of this court to allow plaintiffs to conduct additional discovery before responding to the motion for summary judgment.[1] The discovery the Fifth Circuit thought plaintiffs were improperly denied consisted of the production by defendant of documents relating to defendant's treatment of two African-

---

[1]While apparently having little, if anything, to do with the outcome, the Fifth Circuit made a point in its opinion of questioning the wisdom of a rule of the undersigned that pleadings and motions be signed by attorneys and not law firms. Culwell v. City of Fort Worth, 468 F.3d 868, 871 (5th Cir. 2006). The Fifth Circuit commented that the practice of placing the name and address of a law firm above a by-line and signature block is a "practice that does not seem, to the casual reader, even to be a violation" of the undersigned's rule. Id. A more serious reader would have found, read, and understood the explanation of the Supreme Court in Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120 (1989), of how court papers should be signed:

> [S]ignature on behalf of the firm was not a signature that could comply with the first sentence of [] Rule [11], and not a signature to which the later portions of [] Rule [11] attach consequences. Rule 11 says that papers must be signed "by at least one attorney of record *in the attorney's individual name.*" . . . It has long been thought the better practice for the attorney complying with Rule 11 not to sign *for* his firm, but to sign in his individual name and on his own behalf, with the name of his firm beneath. See Gavit, The New Federal Rules and State Procedure, 25 A.B.A.J. 367, 371 (1939) (Under Rule 11, "the practice for pleadings to be signed in the name of a partnership" is "undesirable" and "improper").

Id. at 125-26 (italics by the Supreme Court; other emphasis added). The rule enforced by the undersigned adopts the "better practice" recommended by the Supreme Court.

American employees who plaintiffs allege engaged in conduct similar to that for which defendant discharged plaintiffs, both white. Culwell, 468 F.3d at 873.

On February 13, 2007, the court had a telephone conference/hearing with counsel concerning additional discovery desired by plaintiffs. On that date the court signed an order fixing a deadline for accomplishment of the discovery desired by plaintiffs. By the same order, the court fixed a deadline of thirty days after completion of discovery for the filing by plaintiffs of their response to the motion for summary judgment. Plaintiffs filed their response on April 27. 2007, which was accompanied by an appendix that included, among other things, affidavits of each plaintiff with exhibits and excerpts from oral depositions with deposition exhibits.[2] On May 14, 2007, defendant replied to plaintiff's response. The reply was accompanied by, among other things, excerpts from each of the plaintiffs' depositions, which supplemented evidence defendant submitted when it filed its motion in September 2005.[3] The court

---

[2]The format of the appendix was revised, and the revised appendix was filed June 11, 2007.

[3]An item of evidence initially submitted by defendant in support of its motion is the affidavit of Carl Smart ("Smart"), who is the supervisor who decided to terminate the employment of plaintiffs. (continued...)

has again considered the motion for summary judgment as it applies to the unlawful discrimination claims in the light of the new summary judgment record. After having done so, the court has concluded that summary judgment should be granted to defendant as to the unlawful discrimination claims.

## II.

### Discussion

A. **Applicable Principles**.

For a description of the nature of the litigation and the contentions of the parties, the court refers to, and here adopts, the parts of the October 19, 2005, memorandum opinion of this court and the opinion of the Fifth Circuit on appeal bearing on those subjects. Oct. 19, 2005, Mem. Op. & Order at 1-4; Culwell, 468 F.3d at 870. The applicable summary judgment principles are those expressed on pages 5-6 of the memorandum opinion. The

---

[3](...continued)
App. in Supp. of Mot. at 48. In their response, plaintiffs assert that the affidavit is fatally defective, presumably on the theory that when Smart related in the affidavit the factual basis for his decision to terminate plaintiffs he was relating hearsay information. Br. in Supp. of Resp. at 2. Plaintiffs are wrong. The affidavit was not offered to prove that the events on which Smart relied occurred, but rather to show his belief that they did occur and to explain his motive for his decision to terminate plaintiffs. Reply at 3. The affidavit is probative summary judgment evidence for the purpose for which it was offered. See Wallace v. Texas Tech Univ., 80 F.3d 1042, 1048 n.4 (5th Cir. 1996).

Fifth Circuit gave the following description of the burden of proof and burden-shifting principles applicable to this case:

> To survive summary judgment on a claim of unlawful racial discrimination in employment, a plaintiff must prove, at least, that there is a genuine dispute of material fact concerning his <u>prima facie</u> case. If the employer comes forward with a legitimate, alternative, non-discriminatory reason for its employment action, the plaintiff must point to disputed facts from which a reasonable factfinder could conclude either that the alternative reason is a pretext or that it was only one of multiple reasons for defendant's conduct, another of which was racial animus. To make a <u>prima facie</u> case, plaintiffs must prove that they (1) are white, (2) were qualified for the positions from which they were discharged; (3) were subjected to an adverse employment action, and (4) were treated less favorably than were similarly-situated [sic] individuals who are not white under nearly identical circumstances.

<u>Culwell</u>, 468 F.3d at 873 (citation and footnote omitted). The Fifth Circuit appears to have assumed that plaintiffs were not attempting to show that they were replaced by persons outside the protected class (white, in this instance). Such an assumption undoubtedly explains why the Fifth Circuit did not say, as it has said in other opinions, that the fourth element can be satisfied either by proof that the plaintiff was replaced by someone outside the protected class <u>or</u> by proof that the plaintiff was treated less favorably than were similarly situated individuals, who were outside the protected class, under nearly identical circumstances. <u>See, e.g.</u>, <u>Okoye v. Univ. of Tex. Houston Health</u>,

5

245 F.3d 507, 512-13 (5th Cir. 2001). Plaintiff has now invoked each of the alternatives.

B.  **The Court Concludes that the Summary Judgment Evidence**
    **does not Create a Prima Facie Case.**

The first task of the court is to determine whether the summary judgment record raises a genuine dispute of material fact as to whether plaintiffs have a prima facie case. There is summary judgment evidence in support of the first three elements of a prima facie case--(1) plaintiffs are white, (2) they are qualified for the positions from which they were discharged, and (3) they were subjected to adverse employment action in the form of discharges from their jobs with defendant.

In their response to the motion for summary judgment, plaintiffs maintain that the fourth element is satisfied by evidence that when they were discharged by defendant they were replaced by a person or persons who were African-American. Pls.' Br. in Supp. of Resp. at 10. Plaintiffs base that contention on what they consider to be summary judgment evidence that all or a part of the job duties of plaintiffs were assumed by African-American employees of defendant. Id. at 6, 8. The court is not persuaded. Transfer of work by a terminated employee to other employees does not constitute "replacement" in an employment-

discrimination context.  See Roper v. Exxon Corp., 27 F. Supp. 2d 679, 682 (E.D. La. 1998).

Plaintiff also contends that there is summary judgment evidence that they were similarly situated to two African-American code enforcement officers working in the same department as plaintiffs and were treated differently and more harshly than those employees under nearly identical circumstances.  Pls.' Br. in Supp. of Resp. at 9.  One of the employees is Ron Reed ("Reed") and the other is Don Crudup ("Crudup").

There is evidence in the summary judgment record that Reed and Crudup are African-Americans and that they held positions of employment with defendant similar to plaintiffs'.  However, the summary judgment record does not contain evidence that would support findings that plaintiffs were treated less favorably than Crudup or Reed under nearly identical circumstances.[4]  The evidence as to Crudup's real estate activities is that he had been involved with a nonprofit organization that had purchased and sold real estate in Fort Worth.  There is nothing in the

_____

[4]In their declarations plaintiffs make conclusory, hearsay statements relative to Crudup and Reed.  App. to Pls.' Br. in Supp. of Resp. at 12-14, 49-51.  The court does not consider that those statements have probative effect as to the truth of the statements; but, even if the court were to give the statements probative effect, the outcome would be the same.  The same is true as to conclusory and hearsay deposition testimony given by plaintiffs.

record that would support a finding that Crudup engaged in conduct nearly identical to the conduct that led to the decisions to terminate the employment of plaintiffs. As to Reed, the summary judgment record reflects that he engaged in one real estate transaction that arguably had characteristics similar to the real estate transactions that led to the decision to terminate the employment of plaintiffs. The Reed transaction is fully described in his deposition, pertinent pages of which are found at pages 119-58 of the appendix to plaintiffs' responsive brief. Reed's conduct to which plaintiffs point is not nearly identical to the ongoing conduct that led to the discharge of plaintiffs, as that conduct is described in the April 23, 2003, report of investigation (App. to Pls.' Br. in Supp. of Resp. at 34-39) and in the letters from the supervisor of plaintiffs, Carl L. Smart ("Smart"), informing plaintiffs that their employment with defendant was being terminated (App. to Mot. at 52, 56).

Moreover, the summary judgment record does not establish that Smart was Crudup's or Reed's supervisor whenever decisions were made as to the propriety of their activities. The circumstances of two employees are not nearly identical if the same decision-maker is not involved. See Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991). Smart was the supervisor

who decided that plaintiffs should be terminated because of their inappropriate behavior. Reed's supervisor was Paul Bounds, Smart's predecessor. Smart had no involvement in the decision regarding whether Reed's activities were inappropriate. Apparently the same was true as to Crudup.

Furthermore, the "nearly identical" test cannot be met unless the decision-maker viewed the employees as similar when the decisions were made. <u>See</u> <u>Perez v. Texas Dep't of Crim. J.</u>, 395 F.3d 206, 214 (5th Cir 2004). There is no summary judgment evidence that Smart viewed the conduct of Reed or Crudup to be similar to the conduct of plaintiffs that caused Smart to decide to cause the termination of plaintiffs' employment.

For the reasons given above, the court concludes that the summary judgment evidence does not raise a genuine dispute of material fact as to whether plaintiffs have a prima facie case.

C.    <u>There is no Summary Judgment Evidence that Defendants'</u>
       <u>Legitimate Non-Discriminatory Reason was a Pretext</u>.

Even if plaintiffs had provided summary judgment evidence of the fourth element of a prima facie case, defendant destroyed the inference created by that case by coming forward with a legitimate non-discriminatory reason for its employment actions. Plaintiffs have adduced no summary judgment evidence that the

reason given by defendant for its employment actions was a pretext or was only one of multiple reasons for defendant's employment decisions, another of which was racial animus.

Smart gave each plaintiff a lengthy letter outlining his non-discriminatory reasons for terminating his employment. Summed up, Smart concluded that each plaintiff had engaged in inappropriate and unethical conduct by mixing his real estate business with his activities as an employee of defendant. Plaintiffs respond by questioning the accuracy of the facts upon which Smart relied in making his decisions to terminate plaintiffs; and, they argue that Smart did not make correct decisions.

The fact that another decision-maker might have made a decision different than Smart's is not relevant. Nor is the fact of whether plaintiffs engaged in the conduct reported to Smart that led to Smart's decision to terminate plaintiffs determinative. See Bryant v. Compass Group USA, Inc., 413 F.3d 471, 476-77 (5th Cir. 2005). The test is whether Smart in good faith believed the information he received regarding plaintiffs' wrongdoings and whether his decision to discharge plaintiffs was based on that belief, not whether the information was accurate.

<u>Waggoner v. City of Garland</u>, 987 F.2d 1160, 1165-66 (5th Cir. 1993).

There is no evidence that puts in issue whether Smart reasonably believed the allegations against plaintiffs and acted on those allegations in good faith. The absence of evidence favorable to plaintiffs on those subjects is fatal to their case. <u>Id.</u> at 1166. Plaintiffs argue at length that they were innocent of the inappropriate conduct reported to Smart, on which he relied in making his employment decisions; and, they maintain that the information received by Smart was misinterpreted. Those contentions are not helpful to plaintiffs, bearing in mind the test mentioned above. There simply is no evidence in the summary judgment record that Smart used the information upon which he based his decisions to terminate plaintiffs as a pretext for discriminatory dismissals.

Thus, plaintiffs had a legitimate non-discriminatory reason for terminating plaintiffs' employment; and, plaintiffs have adduced no summary judgment evidence that the reason was a pretext or that it was only one of multiple reasons for termination of plaintiffs' employment, another of which was racial animus. Plaintiffs' argument that there is evidence of pretext because plaintiffs were not provided a hearing under the

City Code of Ethics is unmeritorious.  The Code of Ethics does not require a management or supervisory employee to file a complaint regarding an employee's conduct before disciplining the employee, and the summary judgment record reflects that defendant does not have a practice of doing so.

*     *     *     *     *     *

In the final analysis, there is nothing in the summary judgment record that constitutes direct evidence or creates an inference that Smart's decision to terminate plaintiffs' employment was motivated to any extent by their race.  Therefore,

III.

ORDER

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted, and that the remaining claims asserted by plaintiffs in the above-captioned action be, and are hereby, dismissed.

SIGNED August 20, 2007.

JOHN McBRYDE
United States District Judge